11th Court of Appeals
Eastland, Texas
Opinion
                                                         
Jimmie Mark Payne
            Appellant
Vs.                  No. 11-03-00076-CR – Appeal from Taylor County
State of Texas
            Appellee
 
            The jury found Jimmie Mark Payne not guilty of burglary of a habitation as charged in count
one of the indictment but found him guilty of theft as charged in count two of the indictment. The
jury also found him guilty of the offense of unauthorized use of a motor vehicle as charged in count
three of the indictment. The State alleged two prior felony convictions in connection with each
count in the indictment. Appellant pleaded true to the enhancement allegations, and the trial court
assessed appellant’s punishment at confinement for 18 years for each offense, to run concurrently. 
We affirm.
            In four issues, appellant argues that the evidence is neither legally nor factually sufficient to
support either of the convictions. In appellant’s last two issues, he challenges the trial court’s rulings
in matters pertaining to alleged comments upon appellant’s post-arrest silence.
            To determine if the evidence is legally sufficient, we must review all of the evidence in the
light most favorable to the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000). In order to determine if the evidence
is factually sufficient, we must review all of the evidence in a neutral light and determine whether
the evidence supporting guilt is so weak as to render the conviction clearly wrong and manifestly
unjust or whether the evidence supporting guilt, although adequate when taken alone, is so greatly
outweighed by the overwhelming weight of the contrary evidence as to render the conviction clearly
wrong and manifestly unjust. Vasquez v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman
v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997);
Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). We review the fact finder’s weighing of the
evidence and cannot substitute our judgment for that of the fact finder. Cain v. State, supra; Clewis
v. State, supra. Due deference must be given to the jury’s determination, particularly concerning the
weight and credibility of the evidence. Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Jones v.
State, 944 S.W.2d 642 (Tex.Cr.App.1996), cert. den’d, 522 S.W.2d 832 (1997). The court has the
authority to disagree with the fact finder’s determination “only when the record clearly indicates such
a step is necessary to arrest the occurrence of a manifest injustice.” Johnson v. State, supra at 9.
            After Tammy Gonzales returned home from her niece’s wedding, she went to bed and went
to sleep. While Gonzales slept, police officers in Comanche, some 130 miles away, were involved
in a high-speed chase involving appellant, who, according to the officers, was driving Gonzales’s
white 1999 Monte Carlo. 
            At 2:45 a.m., Comanche Police Officer David Varner received a dispatch that a vehicle was
about to enter Comanche at a high rate of speed. Officer Varner set up his radar unit; and, when the
vehicle was within working distance of the radar unit, he “clocked” the vehicle running at 101 miles
per hour in a 55-mile-per-hour zone. Officer Varner chased the vehicle until the driver drove into
a dead-end street and through the yard of a residence; the vehicle crashed into a thicket of brush and
trees. Officer Robert Kluge was in another patrol car behind Officer Varner and provided backup
for him. When the Monte Carlo came to a stop after the crash, the driver got out and began to run. 
The officers chased him to a ravine or creek bed and then down the creek bed but did not find him
immediately. The sound of barking dogs at a nearby residence led the officers to a vehicle parked
at that residence. Appellant was in the back seat of the vehicle partially covered by a blanket; the
officers arrested him. Appellant had various items of jewelry in his pocket. Gonzales later identified
some of the jewelry as property that had been taken from her house. 
            Both of the officers involved in the high-speed chase testified that appellant was the driver
of Gonzales’s Monte Carlo. There were no other occupants of the car. No one could have gotten
out of the passenger side of the Monte Carlo after appellant crashed it into the trees because the
passenger side of the vehicle was lodged against the trees. The vehicle was not “hot-wired” but,
rather, was started and operated with a key. 
            At 3:00 a.m., officials with the Comanche Police Department telephoned Gonzales and told
her that her vehicle had been taken. She looked in her driveway and confirmed that her vehicle was
gone. Gonzales had last seen her Monte Carlo in her driveway before she went to bed. She kept a
spare set of keys to her vehicle in her house. It was Gonzales’s practice to keep a window to her
house unlocked so that her young daughters could reach in and unlock the door to the house in the
event that they were locked out during the day. Appellant’s niece lived in the neighborhood and was
one of Gonzales’s daughter’s playmates. There were no signs of forced entry at Gonzales’s home. 
The extra set of keys was missing from the house.
            Appellant called Maggie Turner as a witness. On the night before the early morning hours
when the officers chased and arrested appellant, Turner and appellant, who were just friends at the
time but who were later “romantically involved,” went to The Crossing Club in appellant’s sister’s
vehicle. At about 11:00 to 11:30 p.m., a person by the name of Benny Sierra talked to them. Later,
appellant, Turner, and Sierra went outside. Sierra sold some jewelry to appellant and drove away
in a white Monte Carlo. Turner could tell that the jewelry was stolen. Appellant and Turner later
left the club and stopped at a convenience store. Sierra was at the store in the white Monte Carlo. 
Apparently, Sierra was not able to drive; and appellant told Turner to take his sister’s vehicle to his
sister’s house, that he would take Sierra home in the white Monte Carlo, and that he would pick her
up at his sister’s house. Turner drove the vehicle to appellant’s sister’s house, but appellant never
came after her.
            In December 2002, a month before the trial began, appellant assaulted Turner. In her report
to the police, Turner said that she was afraid of appellant. She told appellant’s attorney about Sierra
approximately “a week, two weeks ago at most” before the trial of the case. Although Turner and
appellant were in a close relationship, she had not heard about this case until appellant’s attorney’s
office contacted her “a week, two weeks ago at most” before the trial. The officers chased and
arrested appellant in the early morning hours of December 17, 2000; the trial began on January 13,
2003.
            Neither Officer Varner nor Officer Kluge, nor Detective Rodney Holder (the Abilene Police
Department detective who was investigating the case), ever heard anything during their investigation
about anyone named Benny Sierra until the time of trial. Turner neither saw nor heard of Sierra after
that night at the club. A private detective attempted to find Sierra for appellant, and he could not. 
            Appellant argues that he could not be convicted of the offense of theft because there was
testimony that the officers believed that whoever broke into the house was the person who stole the
jewelry. Therefore, because the jury found appellant not guilty of the burglary offense, he could not
be convicted of theft under this evidence. We disagree. 
            TEX. PENAL CODE ANN. § 31.03 (Vernon Supp. 2004) provides in relevant part:
            (a) a person commits an offense if he unlawfully appropriates property with
intent to deprive the owner of property.
 
            (b) Appropriation of property is unlawful if:
 
      (1) it is without the owner’s effective consent; [and]
      (2) the property is stolen and the actor appropriates the property
knowing it was stolen by another.
 
            Evidence showing that an accused exercised control over property without the consent of the
owner but with the intent to deprive the owner of the property is enough to prove theft. Receiving
property from another and knowing it to be stolen by him establishes the offense of theft. 
Unexplained possession of recently stolen property is sufficient to prove these elements. Chavez v.
State, 843 S.W.2d 586 (Tex.Cr.App. 1992). The jury was the sole judge of the credibility of the
witnesses and the weight to be given their testimony, and it was free to believe or disbelieve all or
any part of the testimony. TEX. CODE CRIM. PRO. ANN. art. 38.04 (Vernon 1979); Beardsley v.
State, 738 S.W.2d 681, 684 (Tex.Cr.App.1987). The evidence shows that appellant was in
possession of recently stolen property and that the owner of the property had given no one
permission to possess the property. We find that the evidence is both legally and factually sufficient
to support appellant’s theft conviction. We overrule appellant’s first and second issues on appeal.
            In Issue Nos. 3 and 4, appellant argues that the evidence is legally and factually insufficient
to support his conviction for unauthorized use of a motor vehicle. Again, we disagree.
            TEX. PENAL CODE ANN. § 31.07(a) (Vernon 2003) provides:
            (a) A person commits an offense if he intentionally or knowingly operates
another’s...motor-propelled vehicle without the effective consent of the owner.
 
            The officers testified that appellant was the one driving Gonzales’s vehicle some 130 miles
away in Comanche County at speeds of over 100 miles per hour. Gonzales did not give appellant
consent to drive the vehicle. Even if there could be some inference that appellant thought that the
vehicle belonged to Sierra, that appellant was under the mistaken belief that Sierra owned the
vehicle, and that he had Sierra’s consent, the jury was free to reject this inference. McQueen v. State, 
781 S.W.2d 600, 605 (Tex.Cr.App.1989). Viewing the evidence in the light most favorable to the
guilty verdict, we conclude that any rational trier of fact could have found the essential elements of
the offense of unauthorized use of a motor vehicle beyond a reasonable doubt. Further, reviewing
all of the evidence in a neutral light, we determine that the evidence supporting guilt is not so weak
as to render the conviction for unauthorized use of a motor vehicle clearly wrong and manifestly
unjust nor is the evidence supporting guilt so greatly outweighed by the overwhelming weight of the
contrary evidence as to render the conviction clearly wrong and manifestly unjust. Vasquez v. State,
supra; Goodman v. State, supra; Cain v. State, supra; Clewis v. State, supra. Appellant’s third and
fourth issues on appeal are overruled.
            Appellant’s fifth and sixth issues on appeal pertain to claimed violations of his right to
remain silent under TEX. CONST. art. I, § 10; he makes no claims under the United States
Constitution. 
            Appellant’s complaints in his fifth issue on appeal center around this exchange during the
State’s cross-examination of Turner concerning Sierra:
            Q. It would be odd, wouldn’t it, that some four hours later when [appellant
was] arrested he can’t remember a guy’s name, [Sierra]?
 
            A. That’s --
 
            [DEFENSE COUNSEL]: I object to this line of cross examination as
infringing upon the Defendant’s right to remain silent.
 
            THE COURT: Overrule the objection.
 
            Q. Isn’t it odd, ma’am, that if [Sierra] and [appellant] are such good friends
that they’re talking over some kind of alleged transaction at the Crossroads at 11:00,
three hours later when this man’s arrested in Comanche, he can’t remember the other
guy’s name?
 
            [DEFENSE COUNSEL]: Your Honor, may I have the same objection as a
running objection?
 
            THE COURT: Yes, you may.
 
            Q. You find that odd?
 
            A. Yes, sir, I guess.
 
            Article I, section 10 of the Texas Constitution protects a defendant from having his
post-arrest silence, either before or after he has received warnings, used against him. Sanchez v.
State, 707 S.W.2d 575, 582 (Tex.Cr.App.1986). However, an accused may waive this right. Nathan
v. State, 788 S.W.2d 942, 944-45 (Tex.App. – Fort Worth 1990, no pet’n).
            The record shows that the following exchange took place earlier in the cross-examination of
Turner:
            Q. Do you think it odd that [appellant] would not remember [Sierra] later
when he talked to the police officer?
 
            A. I wasn’t there during that.
 
            Q. Did you ever meet a guy – and I’m trying to work off your memory here
– named Chris that evening?
 
            A. No, sir.
 
            Q. You never heard his name mentioned, did you?
 
            A. No.
 
            Q. But you would have this jury believe that [Sierra] and [appellant] were
such good friends that he could call his name off just like that. Is that your
testimony?
 
            A. Yes, sir.
 
            Earlier during the trial, the following exchange already had taken place between the State and
Officer Varner with no objection: 
            Q. Sir, have you ever during the time you were in the company of [appellant]
heard the name Benny Sierra?
 
            A. No, sir.
 
            Q. To this day have you ever heard of that name before?
 
            A. That’s the first I have heard of it.
 
            Further, Officer Kluge and Detective Holder both testified earlier without objection that they
had never heard the name “Benny Sierra” from anyone during their investigation.
            Even if the trial court erred when it overruled appellant’s objection, that testimony had
already been placed before the jury without objection. Error in the admission of evidence is cured
when the same evidence is already before the jury without objection. Nathan v. State, supra. 
Appellant has waived any error, and his fifth issue on appeal is overruled. Ethington v. State, 819
S.W.2d 854 (Tex.Cr.App.1991).
            In his sixth issue on appeal, appellant complains of the following comment by the State
during final argument:
            You could take testimony from Maggie Turner. You remember her
testimony? I think she said, “Well, anybody would have known that was stolen
property.” You remember that? You could take that testimony and say, yeah,
[appellant], he’s guilty of theft. He had property that didn’t belong to him. That
would be simple, wouldn’t it? You could take the testimony of the officers that catch
him going 101 miles an hour in a 55 zone and the fact that he’s in a stolen vehicle
and he knows it is stolen because he is gone. Where was he? He wasn’t out there
going, hey, I got a friend that loaned me this car, was he?
 
            Appellant’s attorney objected to the argument as an impermissible comment on appellant’s
right to remain silent. The trial court sustained the objection and instructed the jury to disregard
pursuant to the attorney’s request, but it denied appellant’s request for a mistrial. There are four
permissible areas of jury argument: “(1) summations of the evidence; (2) reasonable deductions
from the evidence; (3) responses to the defendant’s argument; or (4) a plea for law enforcement.” 
 Lagrone v. State, 942 S.W.2d 602, 619 (Tex.Cr.App.), cert. den’d, 522 U.S. 917 (1997). 
            The argument about which appellant complains is related to evidence concerning Sierra that
first came in before the jury without objection. The argument was not only a summation of the
evidence presented to the jury but also a reasonable deduction from the evidence before the jury. 
Even though, out of an apparent abundance of precaution, the trial court sustained an objection to
the argument and even though it instructed the jury to disregard the argument, the argument was
proper. Because the argument was proper, Waldo v. State, 746 S.W.2d 750 (Tex.Cr.App.1988), and
other similar cases upon which appellant relies, involving actual error, do not apply to the facts of
this case. The trial court did not err when it refused to grant a mistrial. We overrule appellant’s
sixth issue on appeal.
            The judgment of the trial court is affirmed.
 
                                                                                    JIM R. WRIGHT
                                                                                    JUSTICE
 
April 8, 2004
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.